UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| CAREY BRABSON, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Civil No. 10-159-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION &** |
| FLOYD COUNTY BOARD OF EDUCATION, et al., | ) | **ORDER** |
| | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

When is a school board not just a school board? When it is acting as a private entity for profit in the marketplace. Because it is unclear whether the Floyd County Board of Education engaged in a governmental, rather than proprietary, function when it permitted a private cheerleading company to use its property, it is not presently entitled to governmental immunity. Its motion to dismiss is therefore denied.

## BACKGROUND

Generations of young athletes have competed for glory on the wooden planks of the Prestonsburg High School gymnasium floor. Constructed in 1958, the gym floor was built approximately two inches higher than the surrounding floor. R. 17-2. Seeing her daughter, a cheerleader, compete on that floor drew the plaintiff, Carey Brabson, to Prestonsburg High School one day in February 2010. R. 17-1 at 1. Brabson, unaware of the raised gymnasium floor, tripped over the floor's edge and injured her right knee and left ankle. R. 17 at 2. She claims that these injuries have

caused her to miss over a year of work, endure three surgeries, and incur over $65,000.00 in medical expenses. R. 17-1 at 1.

Brabson contends the Floyd County Board of Education had a duty to warn invitees and licensees (such as herself) about this dangerous and unsafe condition. R. 1 at 2-3. To be clear, the Board did not sponsor the event. Rather, Cheer Elite, a private entity, sponsored the competition, and the competitors included both teams affiliated with schools, as well as teams that were not. R. 17 at 5-6. The Board, nevertheless, admits that the condition of the gym floor remained its responsibility. R. 17-3 at 1.

On December 22, 2010, Brabson filed suit against the Floyd County Board of Education and Sherri Patterson, the owner of Cheer Elite. R. 1. She also filed a claim against the Board of Education in the Kentucky Board of Claims. R. 14-1. The Board now maintains that the claim pending against it in this Court should be dismissed because it is entitled to governmental immunity. R. 14. In its view, the Board of Claims is the proper body to review Brabson's claim. While the Board's position may ultimately prove correct, it has not made the required showing to be entitled to immunity at this time.

## DISCUSSION

As an agency of state government, a board of education is entitled to governmental immunity. *Grayson Cnty. Bd. of Educ. v. Casey*, 157 S.W.3d 201, 202-03 (Ky. 2005) (citing *Schwindel v. Meade Cnty.*, 113 S.W.3d 159, 168 (Ky. 2003)). In turn, a board of education is only liable for damages caused by its tortious performance of a proprietary function, not its tortious performance of a governmental

2

function.[1]  *Id.*  The sole issue in the Board's motion to dismiss is whether, in allowing Cheer Elite to use the Prestonsburg High School gymnasium, the Board was engaged in a proprietary or a governmental function.

To begin, Kentucky law gives boards of education control and management over "all public school property." Ky. Rev. Stat. § 160.290(1).  It also grants boards the authority to determine how school property may be used by groups during non-school hours.  Specifically, § 162.050 gives boards the ability to "permit the use of the schoolhouse, while school is not in session, by any lawful public assembly of educational, religious, agricultural, political, civic, or social bodies under rules and regulations which the board deems proper."  This, after all, makes sense.  School buildings are built with public dollars and for public use.  *Hall v. Shelby Cnty. Bd. of Educ.*, 472 S.W.2d 489, 490 (Ky. 1971).

Although Kentucky law grants the Board the authority to permit outside groups to use its facilities, the Board's immunity hinges on whether it was performing a governmental function or a proprietary function when it did so.  The test for making this determination is as follows:  Is the Board "carrying out a function integral to state government," *Ky. Ctr. for the Arts Corp. v. Berns*, 801 S.W.2d 327, 332 (Ky. 1990), or is it "engaged in a business of a sort theretofore engaged in by private persons or corporations for profit," *Yanero v. Davis*, 65 S.W.3d 510, 520 (Ky. 2001) (citation omitted)?

---

[1] For governmental functions, the Kentucky General Assembly has waived immunity when the claim is brought before the Board of Claims.  *Williams v. Kentucky Dep't of Educ.*, 113 S.W.3d 145, 154-55 (Ky. 2003) (citing Ky. Rev. Stat. § 44.073).  Indeed, this plaintiff currently has a claim before the Board of Claims.  R. 14-1.

Situations involving the use of school facilities can be broken down into four basic categories: (1) events sponsored by a board of education involving students affiliated with schools, (2) events sponsored by a board of education involving students both affiliated and unaffiliated with schools, (3) events sponsored by a private entity involving students affiliated and unaffiliated with schools, and finally, (4) events sponsored by a private entity and in no way involving students affiliated with schools. Only events in the first category could be considered strictly "interscholastic," meaning between schools. As even Brabson acknowledges, the conduct of interscholastic athletics is "integral to state government" and therefore a governmental function. R. 17 at 5; *Yanero*, 65 S.W.3d at 527 ("In creating the Kentucky Board of Education, the General Assembly recognized that its functions would include the management of interscholastic athletics . . . ."). Situations in the remaining categories fall into that murky space where the line between governmental and proprietary functions is not always crystal clear. *Breathitt Cnty. Bd. of Educ. v. Prater*, 292 S.W.3d 883, 887 (Ky. 2009) (recognizing the difficulties in drawing the governmental/proprietary distinction).

This case falls into the third category. The competitors included school teams, as well as private teams under the guidance of private, commercial coaches. Cheer Elite, a private cheerleading company—not the Board—sponsored the event. These facts, claim Brabson, take the Board's action out of the governmental immunity realm and subject it to tort liability for her fall.

The test for immunity does not turn on the identity of the competitors. How is a competition between School Team A and School Team B fundamentally different

4

from a competition between School Team A and Private Team A? In both cases, young adults are engaging in athletics and competing against one another in sport. Such information does not clarify whether the Board itself was engaged in a "function integral to state government." *Berns*, 801 S.W.2d at 332. Nor is the identity of the sponsor dispositive. Kentucky law contemplates use of school facilities by educational, religious, agricultural, political, civic, or social bodies. Ky. Rev. Stat. § 162.050. The statute includes no language limiting use to not-for-profit groups. And finally, the collection of registration and entrance fees charged by Cheer Elite does not, on its own, preclude the Board's entitlement to governmental immunity. *See Schwindel*, 113 S.W.3d at 168. After all, the profit received by Cheer Elite says nothing about whether the Board profited (or intended to profit) from this event or engaged in a proprietary event.

Unfortunately, the information needed to evaluate the Board's entitlement to governmental immunity has not been provided by the party with the burden to do so. The Board's motion leaves unanswered even basic questions, such as what fee it charged Cheer Elite for using the gym and whether that fee merely covered expenses or went above and beyond basic operational costs. The Board also fails to include any indication of its *purpose* in allowing Cheer Elite to use its facilities. Perhaps the Board's purpose in renting the space was to provide an opportunity for the community to engage in athletic competition. Or perhaps it hoped to use school facilities for profit. These are legitimate questions the Board must answer. *See Prater*, 292 S.W.3d at 888 (noting that the board's purpose in providing housing for

5

night watchperson on school grounds was not a proprietary function because the board's purpose was not to raise revenue or participate in the local housing market).

To be clear, a board may, under certain circumstances, permit outside groups to use its facilities and retain governmental immunity should an injury or an accident occur during that use; it may even charge a fee for such use. *See* 1980-1981 Ky. Op. Att'y Gen. OAG 80-78, 1980 WL 102895 (Ky. A.G.). But those Kentucky courts weighing the governmental immunity question have considered the purpose of the entity's actions and how that purpose related to the broader goal of providing an education. *See Withers v. Univ. of Ky.*, 939 S.W.2d 340, 343 (Ky. 1997) (explaining that a university medical center performed the same functions as a private hospital but retained governmental immunity due to its teaching mission); *Autry v. W. Ky. Univ.*, 219 S.W.3d 713, 718 (Ky. 2007) (providing university students with dormitory housing constituted a governmental function because it was required by statute and other housing providers did so for profit). Here, the Board has not made clear how its actions relate to any educational goals or objectives. Nor has it shown that its motives were not profit driven.

It may be that, once the Board provides additional information, it can show how Cheer Elite's use was in "harmony with school purposes generally [and] actually stimulate[d] interest in the school and school programs." 1980-1981 Ky. Op. Att'y Gen. OAG 80-78 (citing OAG 62-850). In the absence of that information, the Court is not in a position to determine whether the Board performed a governmental or a proprietary function.

Accordingly, it is **ORDERED** that the Board's motion to dismiss, R. 14, is **DENIED**. The Board may file a motion for summary judgment on governmental immunity grounds at any time and include the relevant documentation and information.

This the 13th day of July, 2011.

Signed By:
*Amul R. Thapar* AT
United States District Judge